# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| TRENTON D. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 5:20-CV-06036-DGK |
| v. | ) |
| | ) |
| EXIDE TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT SUMMARY JUDGMENT

This lawsuit stems from injuries Plaintiff Trenton Johnson suffered from falling into a vat of molten slag at Defendant Exide Technologies, Inc.'s manufacturing facility in Kansas City, Missouri, while changing a conveyor belt. At the time, Plaintiff was working as a millwright for Concorp, Inc. ("Concorp"), and Defendant had hired Concorp to perform various work for it.

Now before the Court is Defendant's motion for summary judgment. ECF No. 89. Holding Defendant has demonstrated that Missouri's Worker's Compensation Law bars Plaintiff's recovery, the motion is GRANTED.

## Standard

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650,

656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive summary judgment, the nonmoving party must substantiate his allegations with "sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

**Material Undisputed Facts**

On February 26, 2018, Plaintiff was employed by Concorp as a union millwright. Defendant Exide hired Concorp as a subcontractor. While Plaintiff was working at Defendant's facility that day, another Concorp employee instructed Plaintiff to remove and replace a conveyor belt. To do this, Plaintiff had to go inside the conveyor which was located directly above a pit containing molten lead. While removing the belt, Plaintiff fell into the pit, seriously injuring him.

The material undisputed facts relevant to the pending motion are as follows.[1]

In 2018 Defendant operated a manufacturing facility in Kansas City, Missouri. Defendant hired third-party Concorp to install various pieces of equipment at the facility, including the Line 2 Chip Conveyor ("the Conveyor") that Plaintiff was working on at the time of the accident.

Concorp began installing the Conveyor in early 2017 and completed installation in the summer of 2017. All the equipment on Line 2, including the Conveyor, was operational in 2017.

The original contract between Defendant and Concorp called for Concorp to perform "Services: Rigging and installation of equipment." The parties agree that there is a very gray and fluid area on when an installation agreement ends and when a contract to do maintenance and upkeep on a line begins.

After the parties entered the initial contract, there was never a subsequent written contract

---

[1] The Court has limited these facts to those that are undisputed and material to the pending summary judgment motion. Excluded are legal conclusions, argument presented as fact, and proposed facts not properly supported by admissible evidence. The Court has also included inferences from undisputed material facts and proposed facts that have not been controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

between them for routine and preventative maintenance of the equipment. But Concorp always charged Defendant for its work on the Conveyor, and Defendant paid Concorp for this work.

Defendant operated the Conveyor for eight to ten months before the accident. Concorp performed service work on the Conveyor between two and twelve times before the accident to attempt to improve its performance. The parties dispute to what degree, if at all, this work was preventative maintenance. After the accident, Concorp worked on the Conveyor between two and six times.

Sometimes when Defendant needed Concorp employees to perform work it would call Concorp to send someone out to do a "one-off" job. Near the time of the accident, Concorp had an employee at the Exide facility once or twice a week.

Concorp would create separate invoices for these employees' work depending on the tasks performed. If it was an all-encompassing one-day job, Concorp would bill under one job number. Concorp created a separate invoice for the work performed on the day of the accident.

On February 26, 2018, Defendant created a "dynamic list" of tasks for Concorp to perform. This "dynamic list" stated that tasks would be added to the list as required and red-lined as they were completed. The belt replacement task Plaintiff was performing at the time of the accident was never formally added to the list. The belt replacement was undertaken after workers who were inspecting the Conveyor for other reasons decided the belt also needed to be replaced.

Defendant also had its own employees who performed maintenance work on equipment at the facility, but they did not perform any substantive work or maintenance.

## Discussion

Missouri's Workers' Compensation Law ("the Act") provides the exclusive remedy against all employers for injuries covered by its provisions. *State ex rel. Taylor v. Wallace*, 73 S.W.3d

3

Case 5:20-cv-06036-DGK   Document 127   Filed 11/07/23   Page 3 of 8

620, 621 (Mo. banc 2002) (citing Rev. Stat. Mo. § 287.120). When the Act applies, it replaces any right an injured employee may otherwise have to bring about a common-law action to recover for injuries sustained on the job. *See Vatterott v. Hammerts Iron Works, Inc.*, 968 S.W.2d 120, 121 (Mo. banc. 1998).

To prevent employers from evading the Act's requirements by hiring independent contractors to perform work that would otherwise be performed by ordinary employees, the Act establishes a constructive employment relationship between contractors and their subcontractors' employees and extends coverage under the Act to employees of contractors and subcontractors who have performed work under a contract. Mo. Rev. Stat. § 287.040.1;[2] *McCracken v. Wal-Mart Stores E., LP*, 298 S.W.3d 473, 480 (Mo. banc 2009). Such a statutory employment relationship exists if: (1) the work is performed pursuant to a contract; (2) the injury occurred on or about the premises of the alleged statutory employer; and (3) the injury occurred while the alleged statutory employee was performing work that was in the usual course of the alleged statutory employer's business. *McCracken*, 298 S.W.3d at 480. The party asserting the existence of statutory employee status bears the burden of proving its existence. *Id*.

Defendant has moved for summary judgment, arguing the Act provides the exclusive remedy for Plaintiff's injury because he is considered Defendant's statutory employee. This is an affirmative defense, *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 789 (Mo. banc 2016), which a district court may determine on a motion for summary judgment, *Hunt v. Materials Packaging*

---

[2] It provides:

> Any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

4

*Corp.*, No. 10-0153-CV-W-DW, 2010 WL 11619056, at *3 (W.D. Mo. Dec. 28, 2010) (citing *McCracken*, 298 S.W.3d at 479). Plaintiff contends the Act does not control here because the work he was performing when injured was not performed under a contract, nor was he performing work that was in the usual course of Defendant's business.[3]

Plaintiff's arguments are unavailing.

I. **Concorp's belt replacement was performed under an oral implied contract.**

With respect to the first requirement, the record amply demonstrates that Plaintiff's work on the Conveyor was performed pursuant to an agreement between Defendant and Concorp, albeit an implied oral agreement, for ongoing maintenance and repair. "The word 'contract' in the context of Section 287.040.1 includes agreements which are written, oral, express or implied." *Linkous v. Kirkwood Sch. Dist.t*, 626 S.W.3d 889, 895 (Mo. App. 2021).

In this case, following Concorp's installation of the Conveyor, Concorp continued to return to Defendant's facility as needed to perform ongoing and preventative maintenance and repair work on it, including the belt swap Plaintiff was performing when injured. Under this agreement, Concorp would receive a call or email from Defendant to perform work on the Conveyor it had installed, Concorp would perform the work as requested, and then Concorp would be paid for it. Granted, the terms of this agreement were somewhat unusual. For example, the agreement provided for variability in what Concorp would charge for its work. Sometimes Concorp charged Defendant under a flat rate; sometimes it charged on a time and materials basis. Sometimes the manner Defendant would be charged was determined beforehand, sometimes the manner was determined after the fact. Sometimes Concorp wanted a rough estimate of what the work would cost beforehand, sometimes it did not. But even though the parties' agreement provided unusual

---

[3] There is no dispute that the second requirement for a statutory employment relationship to exist—that the injury occurred on Defendant's premises—is satisfied here.

flexibility into how Defendant would be charged, the parties still had an agreement.

This agreement also allowed additional work to be performed as the need arose during a given job. This is how the belt replacement that led to Plaintiff's injuries arose, after a Concorp employee inspecting the Conveyor for other reasons determined the belt needed to be replaced. Even though the belt replacement was not specifically anticipated at the start of the day, it was nonetheless covered by the agreement. The agreement allowed the scope of the work performed to be expanded to address maintenance work which may not have been foreseeable at the outset, such as the need for a belt replacement. This is permissible under the statute, which contains no requirement that the work being performed by the subcontractor when injured be explicitly contemplated by the agreement. *See Olendorff v. St. Luke's Episcopal-Presbyterian Hosps.*, 293 S.W.3d 47, 50 (Mo. App. 2009) (holding "the absence of a specific provision in the contract" providing for either the installation or maintenance of height restrictors was not fatal to the existence of statutory employment).

Hence, the Court holds a contract was in place for purposes of § 287.040.1 which covered Plaintiff's work on the Conveyor.

**II.     The belt replacement was performed in the usual course of Defendant's business.**

Although it is a close call, the record also shows the belt replacement was performed in the usual course of Defendant's business. Missouri law defines the "usual course of business" as activities that are (1) routinely done, (2) on a regular basis and frequent schedule, (3) contemplated in a contract or agreement between the contractor and the alleged statutory employer to be repeated over a relatively short span of time, and (4) performance of which without the contract would require the statutory employer to hire permanent employees. *McCracken*, 298 S.W.3d at 480; *Bass v. Nat'l Super Markets, Inc.*, 911 S.W. 2d 617, 621 (Mo Banc 1995). "This definition is designed

to exclude specialized or episodic work that is essential to the employer but not within the employer's usual business as performed by its employees." *McCracken*, 298 S.W.3d at 480 (internal quotation omitted). This is a fact-driven inquiry. *Id*.

The facts in this case are sufficiently like those in *Olendorff v. St. Luke's Episcopal Presbyterian Hospitals*, in which the Missouri Court of Appeals found the plaintiff was the defendant's statutory employee. The plaintiff in *Olendorff* was an injured worker employed by a contractor who had a contract with the defendant hospital to manage and maintain the hospital campus. *Olendorff*, 293 S.W.3d at 48. The work consisted of cleaning, renovating, repairing, and remodeling office spaces, buildings, and garages. *Id*. at 48-49. The contract gave the contractor discretion to accept and charge for projects of a materially different nature. *Id*. at 48. The plaintiff was injured while he was changing hardware on a recently installed height restrictor in one of the hospital's parking garages. *Id*. at 48-49. Focusing on the "regular or frequent" element of "usual business," the *Olendorff* court held this work was the type of maintenance work contemplated by and regularly performed pursuant to the contract. *Id*. at 50. It also held that "the absence of a specific provision in the contract" for the work performed was not determinative. *Id*.

Although there are minor differences between this case and *Olendorff*, the cases are sufficiently analogous that the result should be the same. In this case, Plaintiff, through his employer Concorp, was hired to perform a routine belt removal and replacement as part of an ongoing contract to provide maintenance on the Conveyor. This type of work was routinely performed by Concorp for Defendant following Concorp's installation of the Conveyor for Defendant. Although Concorp employees were not at Defendant's facility every day, they were at the facility weekly performing the type of ongoing maintenance and repairs on the Conveyor so that it was properly functioning. This is enough to satisfy the "regular basis and frequent schedule"

requirement. Further, the work Plaintiff was performing at the time of the accident was exactly the kind of work contemplated by the parties' contract, albeit an oral one, for ongoing maintenance and repair of the Conveyor. Finally, if Concorp had not provided this work, then Defendant Exide would have had to hire additional permanent employees to perform the same work. Hence, this work was performed in Defendant's "usual course of business."

The Court concludes that under Mo. Rev. Stat. § 287.040.1, Plaintiff is a "statutory employee" of Defendant, and therefore his exclusive remedy for his injuries arising from this accident is to seek worker's compensation benefits. Because Plaintiff's civil action against Defendant is barred by the Act's exclusive remedy provisions, Defendant is entitled to summary judgment.

## Conclusion

Defendant's motion for summary judgment (ECF No. 89) is GRANTED.

**IT IS SO ORDERED.**

Date:  November 7, 2023                  /s/ Greg Kays
                                          GREG KAYS, JUDGE
                                          UNITED STATES DISTRICT COURT